# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DR. JOSEPH ESHUN | : | |
| Plaintiff | : | CIVIL ACTION NO. 3:15-1034 |
| v. | : | (JUDGE MANNION) |
| DR. MARCIA WELSH, et al. | : | |
| Defendants | : | |

## MEMORANDUM

Presently before the court is defendants Marcia G. Welsh ("Welsh"), Shelia Handy ("Handy"), and Terry Wilson's ("Wilson") (collectively "defendants") motion for summary judgment. (Doc. 20). Based on the following, defendants' motion for summary judgment (Doc. 20) will be **DENIED**.

### I. PROCEDURAL HISTORY

On May 28, 2015, plaintiff Joseph Eshun ("Eshun") filed a two-count complaint against defendants under 42 U.S.C §1981 and 42 U.S.C. §1983 alleging that his civil rights were violated when he was denied status as a tenured professor because of his race. (Doc. 1). On February 14, 2017, defendants filed a motion for summary judgment (Doc. 20) and a statement of facts (Doc. 21). Then, on March 21, 2017, defendants filed a brief in

support of their motion. (Doc. 24). Eshun filed a brief opposing defendants' motion on May 15, 2017. (Doc. 29)[1]. On May 30, 2017, defendants filed a reply brief in support of their motion. (Doc. 36). Defendants' motion (Doc. 20) is now ripe for disposition.

## II. LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, the discovery [including, depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also* Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party and is material if it will affect the outcome of the trial under governing substantive law. *Anderson v. Liberty Lobby, Inc.*,

---

[1] Within his brief in opposition (Doc. 29), Eshun has a "Factual Overview of Plaintiff's Employment" (Doc. 29, at 5-17) and "Plaintiff's Responses to Defendants' Statement of Material Facts (Doc. 29, at 28-32)." Under this court's local rules, these two portions of Eshun's opposition brief should have been filed separately as a statement of facts. Local Rule 56.1. However, in the interest of fairness and justice, and considering defendants acknowledgment that "[p]laintiff . . . has responded to the Defendant[s'] [sic] statement of material facts," (Doc. 36, at 1) the court will consider these facts as if they were filed properly.

477 U.S. 242, 248 (1986); *Aetna Cas. & Sur. Co. v. Ericksen*, 903 F. Supp. 836, 838 (M.D.Pa. 1995). At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *see also Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (explaining that a court may not weigh the evidence or make credibility determinations). Rather, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007).

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323-24. The moving party can discharge the burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003); *see also Celotex*, 477 U.S. at 325. If the moving party meets this initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998) (quoting *Matsushita Elec. Indus. Co. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). However, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Federal Rule of Civil Procedure 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23; *Jakimas v. Hoffman-La Roche, Inc.*, 485 F.3d 770, 777 (3d Cir. 2007).

**III. MATERIAL FACTS**

The following are the undisputed facts material to resolving the pending motion for summary judgment[2]. Eshun was born in Ghana and came to the United States in 1992. After obtaining a bachelor's, doctorate, and two master's degrees, Eshun became an associate professor of business management at East Stroudsburg University ("ESU"). In 2012, Welsh became president of ESU. As president, Welsh was the ultimate decision-maker in whether to grant or deny tenure to professors at ESU. Before determining whether a professor should be granted tenure, Welsh receives

---

[2] The relevant facts are taken from the pleadings (Doc. 1; Doc. 6), defendants' statement of facts (Doc. 21), and Eshun's statement of facts (Doc. 29). Any material facts that remain in dispute are noted as such.

recommendations from the Department Tenure Committee ("DTC"), the Department Chair ("DC"), and the University-Wide Tenure Committee ("UWTC").[3] Welsh's decision-making process consists of reading the recommendations and the applicant's portfolio, as well as, meeting with the UWTC.

In the 2012-2013 academic year, at least nine or ten professors were eligible for tenure at ESU; three of whom were from the business department. The professors do not compete for one tenure position; they could all receive tenure if they were qualified. The three professors eligible for tenure from the business department were Ken Levitt ("Levitt"), Shelia Handy ("Handy"), and Eshun. Handy became department chair in May of 2010. However, Handy could not be the department chair during her tenure process, so she stepped down from the position for the 2012-2013 school year. Terry Wilson ("Wilson"), an associate professor in the business management department, became the temporary department chair.

As temporary department chair, Wilson gave a negative recommendation regarding Eshun and Levitt's tenure applications and a

---

[3] Eshun disputes this fact because Welsh admitted to also considering a letter from the Provost regarding Eshun's tenure application. However, genuine disputes of material facts exist without considering the Provost's letter, so it is unnecessary to examine this dispute herein.

positive recommendation regarding Handy's application. The three-person DTC unanimously recommended that Eshun be granted tenure. The UWTC's vote regarding Eshun's tenure application consisted of three votes recommending and five votes recommending with reservations. In May of 2013, Welsh denied tenure to Eshun, Levitt, and two other professors. When a professor does not receive tenure, they are given one more academic year with ESU.

### IV. DISCUSSION

Eshun argues that racial discrimination can be inferred from his denial of tenure under the well-established *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).

> Under *McDonnell Douglas*, the employee must make out a *prima facie* case of intentional discrimination. Whether the employee has done so is a question of law for the court. If the plaintiff establishes a *prima facie* case, the defendant has a "relatively light burden" to produce evidence of a legitimate, non-discriminatory reason for its actions. The burden then shifts back to the plaintiff to show that the given reason was a pretext for the defendant's actual discriminatory motive. To avoid summary judgment, then, [Eshun needs] to establish a *prima facie* case of discrimination and produce evidence that would allow a factfinder to reasonably conclude that any non-discriminatory reasons articulated by [defendants] were pretextual.

> In order to establish a *prima facie* case of discrimination under *McDonnell Douglas*, the plaintiff must prove that (1) [he] is a member of a protected class; (2) [he] was qualified for the position; (3) [he] suffered an adverse employment action; and (4) the circumstances could give rise to an inference of unlawful discrimination. Such an inference may be drawn if the plaintiff identifies "a similarly situated individual outside of the protected class, who engaged in the same conduct but was treated more favorably."

*Cooper v. Thomas Jefferson Univ. Hosp.*, 743 Fed.Appx. 499, 501-02 (3d Cir. 2018) (citations omitted).

There is no dispute that Eshun meets the first, third, and fourth prongs[4]: as an African-American, he is a member of a protected class, his denial of tenure is an adverse employment action, and there were other professors outside the protected class, who were granted tenure around the same time Eshun was denied tenure. (Doc. 24, at 4). Thus, the only prong of Eshun's

---

[4] Defendants do not contest that Eshun is black and has satisfied the first prong. (Doc. 24, at 4). In their brief, defendants also state, "Shelia Handy, a white female, did receive tenure during the period relatively near to the time Eshun was [not] granted tenure," and therefore, acknowledge Eshun has "satisfied the third prong." (Doc. 24, at 4). However, this evidence supports the notion that Eshun has satisfied the fourth not third prong. Defendants make no mention of whether they contest the actual third prong—that Eshun "suffered an adverse employment action." *Cooper*, 743 Fed.Appx. at 502. Considering defendants expressly discussed their admission or denial of Eshun's satisfaction of three of the four prongs, the court deems defendants to have admitted that Eshun has satisfied the third prong.

*prima facie* case in dispute is the second prong—whether he was qualified for tenure.

The Third Circuit Court of Appeals has "explained that the precise elements of a [*prima facie*] showing will vary depending on the circumstances of the case." *Roebuck v. Drexel Univ.*, 852 F.2d 715, 726 (3d Cir. 1988).

> In the context of a failure to grant tenure . . . to satisfy the qualifications element of the *McDonnell Douglas* test, plaintiff need only show that he was sufficiently qualified to be among those persons from whom a selection, to some extent discretionary, would be made. That is, he need show only that his qualifications were at least sufficient to place him in the middle group of tenure candidates as to whom both a decision granting tenure and a decision denying tenure could be justified as a reasonable exercise of discretion by the tenure-decision making body.

*Id* (quotations omitted).

Defendants allege that Eshun was not in the "middle group" because he was given a negative recommendation by the DC and received a split vote from the UWTC. (Doc. 24, at 5). Defendants seem to suggest that this "group" of applicants only consisted of the three tenure-eligible professors in the Business Management Department and that Eshun was the least qualified among them and thus, not in the "middle." However, the phrase "middle group" is not meant to relate to an applicant's ranking amongst fellow applicants, but rather an applicant is in the "middle group" if "both a decision granting tenure and a decision denying tenure could be justified as a

reasonable exercise of discretion by the tenure-decision making body." *Roebuck*, 852 F.2d at 726. That is, if it would be reasonable to grant tenure to Eshun, then he is in the "middle group" and has satisfied prong two of the *McDonnell Douglas* framework. The court finds that granting Eshun tenure would be a "reasonable exercise of discretion" considering the DTC and UWTC recommended that Eshun receive tenure. Therefore, Eshun has established a *prima facie* case of discrimination.

Next, defendants allege that Welsh "did not grant Eshun tenure because she believed he had a very [weak] [sic] tenure application file and did not meet the criteria for tenure at ESU." (Doc. 24, at 6). Even if defendants alleged non-discriminatory reason for denying Eshun tenure is legitimate, material facts are still genuinely disputed by the parties, which may allow a reasonable jury to conclude that defendants' reasons for denying Eshun tenure are merely pretextual.

Before deciding Eshun's tenure status, Welsh reviewed the recommendations of the DC, DTC, and UWTC. Between the DC and two committees, there were twelve people, who evaluated Eshun and submitted a recommendation regarding his tenure. While some had reservations, overall, eleven of the twelve people recommended that Eshun should be granted tenure. Welsh admits that because five people had reservations

regarding their recommendation and did not convey their reservation to Welsh that she did not consider their votes to be proper, rather she deemed them "no votes.[5]"

A genuine dispute remains as to whether it was proper for Welsh to conclude that the five recommendations with reservations could be considered a "no vote." Additionally, a genuine dispute remains between Welsh's reasons for denying Eshun tenure and the DTC's reasons for recommending tenure.

Specifically, the DTC stated: "[d]uring his time at ESU, Dr. Eshun has demonstrated continuous high-quality performance in teaching, scholarship, and service worthy of tenure." (Doc. 30-8, at 1). This statement, which was endorsed by three professors in the business management department, completely contradicts Welsh's statement that "[e]vidence indicates that [Eshun's] teaching does not meet expected standards." (Doc. 30-11).

Next, the DTC stated: "[w]hen (if) future faculty resources permit, the department will support additional growth in the entrepreneurship courses

---

[5] In her deposition, Welsh states that she told the UWTC to fill in the justification for their reservations. She states the UTWC "then changed it to be recommend or not recommend. But then in the justification they said it was a split vote recommend, recommend with reservations, not recommend." (Doc. 21-1, at 21-22). However, the changed votes of the UWTC with justification was never submitted by either party.

that [Eshun] has developed and in new programs, including a new specialization in entrepreneurship and a new minor in entrepreneurship (the department has recently approved moving forward with the minor this semester)." (Doc. 30-8, at 2). Again, this statement by the DTC contradicts Welsh's belief that "evidence . . . indicates insufficient accomplishments in meeting expectations in service, including curriculum development expectations . . ." (Doc. 30-11).

Finally, the DTC stated: "[t]he committee concludes that Dr. Eshun has presented convincing evidence of continuing engagement in high-quality scholarship that informs his teaching as well as contributing to external knowledge communities." (Doc. 30-8, at 3). Once again, this statement by the DTC contradicts Welsh's statement that "[e]vidence of scholarly activity was less than expected for an associate professor." (Doc. 30-11).

Therefore, the court finds that Eshun has presented sufficient evidence to establish that a reasonable jury may conclude that his denial of tenure was pretextual. As such, the law requires that summary judgment be denied.

## V. CONCLUSION

Based on the foregoing, defendants' motion for summary judgment (Doc. 20) will be **DENIED**. An appropriate order shall issue.


                                        s/ *Malachy E. Mannion*
                                        **MALACHY E. MANNION**
                                        **United States District Judge**

**DATE: February 11, 2019**
O:\MANNION\SHARED\MEMORANDA - DJ\CIVIL MEMORANDA\2015 MEMORANDA\15-1034-02.DOCX